UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SS&C TECHNOLOGIES, INC. | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | Case No. 3:07 CV 484 (CFD) |
| | : | |
| PROVIDENCE INVESTMENT | : | |
| MANAGEMENT, LLC | : | |
|     Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, SS&C Technologies, Inc. ("SS&C"), brought this suit alleging breach of contract by the defendants, Providence Investment Management, LLC ("PIM").

PIM has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2) alleging that this Court lacks personal jurisdiction over it. In the event that its motion to dismiss is denied, PIM seeks the alternative relief of a transfer of this action under the doctrine of forum non conveniens. For the reasons below, PIM's motion is denied in its entirety.

**I.    Background[1]**

SS&C is a Delaware corporation with its principal place of business in Windsor, Connecticut. According to PIM, it is a Delaware limited liability company with its principal place of business in Providence, Rhode Island.[2] While the complaint alleges that all of the

---

[1] The following facts are taken from the complaint, and the affidavits submitted by the parties.

[2] While PIM does not challenge this Court's subject matter jurisdiction, the Court notes that the parties are diverse because the citizenship of an LLC is determined by the citizenship of its members and not the state in which the LLC is registered. See, e.g. Handelsman v. Bedford Village Assos. L.P., 213 F.3d 48, 52 (2d Cir. 2000).

1

members of PIM are citizens of Rhode Island, PIM maintains that its three members are citizens of Rhode Island, New York and Massachusetts, respectively.

In late 2004, PIM contacted SS&C about using CAMRA, a software program available through SS&C. CAMRA is a program that provides accounting and "back office" assistance to track activity of fund assets and liabilities on a daily basis. Thereafter, PIM and SS&C entered into negotiations for SS&C to provide PIM with installation of, access to, and use of CAMRA. These negotiations were conducted via telephone, e-mail and faxes between representatives of PIM in Rhode Island and SS&C in Connecticut. The contract (the "CAMRA agreement"), which is the subject of this action, was ultimately signed by PIM in Rhode Island on September 30, 2005.

Under the CAMRA agreement, SS&C was to provide access to CAMRA through an internet connection between PIM's existing computers in Rhode Island and SS&C's servers in Connecticut. PIM's chief financial officer visited SS&C's Connecticut offices in May 2006 to discuss problems PIM was having with the CAMRA system. This was the only time PIM personnel visited Connecticut in connection with its relationship with SS&C.

PIM, a registered investment advisor that manages the investments for various funds, does not have offices or employees in Connecticut. It does not advertise to the general public and none of the funds it manages has a Connecticut investor.

## II. Motion to Dismiss Standard

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant." Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn. 2003) (citing Metro. Life Ins. v.

Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996)); Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn. 1993). "A plaintiff facing a Fed.R.Civ.P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction. Moreover, we construe the pleadings and affidavits in plaintiff's favor at this early stage." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) (internal citations omitted); see also Amerbelle Corp. v. Hommell, 272 F. Supp.2d 189, 192 -193 (D. Conn. 2003); Jarrow Formulas, Inc. v. International Nutrition Co., 175 F. Supp.2d 296, 300 (D. Conn. 2001).[3]

### III. Personal Jurisdiction

PIM claims that the Court lacks personal jurisdiction over it because Connecticut's long-arm statute for individuals, Conn. Gen. Stat. § 52-59b, is the only statute applicable to limited liability companies, and this statute does not authorize jurisdiction over PIM. PIM also argues that exercising jurisdiction over it would not comport with due process.

#### A. Connecticut's Long Arm Statutes

In diversity cases, personal jurisdiction is determined by the law of the state in which the district court sits. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 231 (2d Cir. 1963). Connecticut General Statutes § 52-59b(a) governs the exercise of jurisdiction over nonresident individuals, foreign partnerships and foreign voluntary associations. Under that statute, personal jurisdiction exists if the entity, inter alia, "(1) Transacts any business within the state; . . . or (5)

---

[3] In connection with the instant motion, PIM submitted the affidavit of Richmond Jeffrey, the chief financial officer of PIM, and the CAMRA agreement. SS&C submitted the affidavit of Shannon Goode, the vice president of SS&C Direct, a business unit of SS&C, and invoices submitted to PIM.

3

uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state."

Connecticut General Statutes § 33-929(f) provides in pertinent part that:

Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state . . .

It remains unsettled whether a foreign limited liability company should be treated as a corporation or a partnership for purposes of the Connecticut long-arm statutes. Compare Nadler v. Grayson Const. Co., Inc., No. CV020190015S, 2003 WL 1963158, at *5 (Conn. Super. April 15, 2003) (treating limited liability company as a partnership); Screen Tech, Inc. v. Carolina Precision Plastics, LLC, No. 3:05CV975(SRU), 2006 WL 197360, at *2 (D. Conn. Jan. 25, 2006) (same); New England National LLC v. Kabro of East Lyme, No. 550014, 2000 WL 254590, at *2 (Conn. Super., Feb. 23, 2000) (same); Worms v. WGB Partners, L.L.C., No. CV 950149182S, 1996 WL 571464, at *3 (Conn. Super., Sept. 26, 1996) (same); with In re Bayou Hedge Fund Investment Litigation, 472 F. Supp.2d 534, 537 (S.D.N.Y. Jan 19, 2007) (applying Connecticut law and holding that a limited liability company should be treated as a corporation, but referring to limited liability company as limited liability corporation) and Hartford Fire Ins. Co. v. United Restoration LLC, No. CV020813517, 2003 WL 1962864, at *5 (Conn. Super. Ct. Apr. 4, 2003) (treating limited liability company as corporation in part because LLC referred to itself as a corporation). Because the Court finds that it has jurisdiction over PIM under both §

52-59b(a) and § 33-929(f), it need not resolve this issue.[4]

### 1. PIM's Contact with Connecticut

SS&C maintains that PIM transacted business within Connecticut by entering into the contract that is the subject of this action. In particular, PIM exchanged phone calls, letters, e-mails and faxes with SS&C's Windsor, Connecticut office for the purpose of negotiating, entering into, and carrying out the contract. Further, PIM sent a representative to Connecticut to discuss the contractual relationship between SS&C and PIM.

The Connecticut Supreme Court construes "transacts any business" "to embrace a single purposeful business transaction." Zartolas v. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179 (1981) (holding that sale of property located in Connecticut constituted transacting business within the state, even where the deed was executed out of state). "[O]ne need not be physically present in order to be subject to the jurisdiction" of Connecticut courts under this provision. Under Par Associates, L.L.C. v. Wash Depot A., Inc., 47 Conn. Supp. 319, 322, 793 A.2d 300, 302 (Conn. Super. 2001) (holding that negotiations for sale of Connecticut property conducted during telephone call between New York defendant and Connecticut plaintiff were sufficient to establish personal jurisdiction). However, entering into a contract with or directing communications at a party located in Connecticut does not necessarily confer personal jurisdiction. See, e.g., Ryan v. Cerullo, 282 Conn. 109, 120-21, 918 A.2d 867 (Conn. 2007) (holding that New York accountant's preparation of Connecticut income tax returns for

---

[4] However, the practice of treating limited liability companies as limited partnerships to determine diversity jurisdiction suggests that similar treatment is likely appropriate for purposes of determining personal jurisdiction. See, e.g., Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998) (noting the similarity between limited liability companies and limited partnerships).

Connecticut resident did not constitute transacting business within Connecticut); Custom Nav. Systems, Inc. v. Pincus, 935 F. Supp. 117, 119 (D. Conn. 1995) (nonresident defendant's telephoning and writing to Connecticut corporation in connection with corporation's sale and installation of equipment on defendant's boat located in New York did not constitute "transaction of business" within Connecticut).

Instead of applying a rigid formula to determine whether a party's contracts constituted the transaction of business within Connecticut, the Court balances considerations of public policy, common sense, and the chronology, geography, quality and nature of the party's contacts with the state. Gaudio v. Gaudio, 23 Conn. App. 287, 298, 580 A.2d 1212 (Conn. App. 1990) (holding that one trip to Connecticut in which oral agreement to purchase the stock of a Connecticut corporation was formed constituted transacting business within the state). In doing so the Court is guided by several factors, including:

> (i) whether the defendant has an on-going contractual relationship with a [Connecticut] corporation, (ii) whether the contract was negotiated or executed in [Connecticut] and whether, after executing a contract with a [Connecticut] business, the defendant visited [Connecticut] for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires [the defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted).[5]

PIM entered into an on-going contractual relationship with SS&C by executing the

---

[5] While the Second Circuit applied New York law in Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp. the Connecticut Supreme Court has noted the similarity between the personal jurisdiction statutes of Connecticut and New York and held that New York law is "pertinent" to interpreting the Connecticut statute. Zartolas v. Nisenfeld, 184 Conn. at 474.

CAMRA agreement. Significantly, the CAMRA agreement was not a one-time sales agreement: The agreement gave PIM on-going access to software and data located on the "SS&C Environment" in Connecticut in exchange for an annual fee, billed monthly. SS&C agreed to provide a certain level of service and to make support staff available to PIM. PIM in turn agreed to designate a "system administration liaison with SS&C." Additional services were to be provided by SS&C staff for an hourly fee. The agreement contemplated that SS&C would periodically request such additional services, and a template for work requests was attached to the agreement.

The CAMRA agreement was negotiated through communications exchanged between Rhode Island and Connecticut. While no PIM representative was physically present in Connecticut during the negotiation of the contract, after executing the contract, PIM sent a representative to Connecticut for the purpose of meeting with SS&C regarding the relationship. In addition, the contract provided that it was to be "governed under the laws of the State of Connecticut without regard to conflicts of law principles." Finally, as called for by the agreement, SS&C sent PIM regular invoices, containing SS&C's Connecticut address and directing PIM to remit payment to SS&C's bank account in Hartford, Connecticut.

Based on the above considerations, the Court concludes that by entering into an on-going contractual relationship with a Connecticut party to obtain access to software and processing services located in Connecticut, and by visiting Connecticut in connection with that contractual relationship PIM transacted business within Connecticut within the meaning of § 52-59b(a). Furthermore, the CAMRA agreement constituted a "contract made in this state or to be performed in this state" within the meaning of § 33-929(f).

### B. Due Process

Since both Connecticut long-arm statutes are satisfied, the Court must now address whether exercising jurisdiction over PIM would comport with due process. "In order to satisfy the Due Process Clause of the United States Constitution, the exercise of long-arm jurisdiction by New York must be based on defendants' 'minimum contacts' with the state and must comport with 'traditional notions of fair play and substantial justice.'" Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d at 32 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

"When, [as here,] the controversy is specifically related to a defendant's contacts with a forum, there is sufficient due process contact if 'the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir.1985) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Here, as set forth above, PIM knowingly entered into an ongoing contractual relationship with a party located in Connecticut, and visited Connecticut in connection with this relationship. This action relates to an alleged breach of that contract. Thus, exercising jurisdiction comports with due process.

Because exercising jurisdiction over PIM comports with due process, its motion to dismiss for lack of personal jurisdiction is denied.

### IV. Venue

In the alternative, PIM requests that this case be transferred to the District of Rhode Island. 28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). "The burden of justifying transfer of venue . . . lies with the moving party, who must make a clear and convincing showing that transfer should be made." Paragon Realty Group LLC v. Lecates, No. 3:06CV846(CFD), 2007 WL 419617, at *4 (D. Conn. Feb. 5, 2007); see also O'Brien v. Okemo Mt., 17 F. Supp.2d 98, 104 (D. Conn. 1998) (movant's burden to show that the relevant factors "strongly favor" transfer). The factors to be considered by a district court in evaluating a motion for transfer under § 1404(a) include "convenience of the parties and witnesses, availability of process to compel unwilling witnesses to testify, location of the relevant documents, locus of the operative facts, relative means of the parties, the forum's familiarity with governing law, plaintiff's choice of forum, and the interests of justice." A Slice of Pie Prods v. Wayans Bros. Entm't, 392 F. Supp.2d 297, 305 (D. Conn. 2005).

PIM argues that it would be unfair to require it to litigate this case in Connecticut because it has a long-standing and ongoing relationship with Rhode Island counsel. On the other hand, PIM maintains that SS&C would not be similarly burdened by litigating this case in Rhode Island because their present counsel has an office in that state. Further, PIM posits that being required to defend this action in Connecticut will likely result in inconvenience to witnesses.

PIM has failed to establish that it would be in the interests of justice to transfer this action to Rhode Island. Half of the witnesses are likely to be located in Connecticut rather than Rhode

9

Island. Rhode Island is less than a two-hour drive to Connecticut, and PIM has not shown that making this trip would present a particular hardship to its witnesses. Further, while PIM does not claim that it would seek to call unwilling witnesses, the Court notes that Providence, Rhode Island is less than 100 miles from Hartford. Process to compel any unwilling witnesses to testify would thus likely be available.[6] Relevant documents, and the locus of operative facts are likely in both Connecticut and Rhode Island. PIM has not presented any information about the relative means of the parties. Finally, PIM will not be prejudiced by being forced to defend this case in Connecticut; its Rhode Island counsel may move to be admitted pro hac vice.

Thus, PIM has failed to overcome SS&C's choice of venue and its motion to transfer venue is denied.

V. Conclusion

Defendant's Motion to Dismiss [Doc. # 10] is DENIED.

So ordered this __12th__ day of March 2008 at Hartford, Connecticut.

/s/ Christopher F. Droney

**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[6] One potential witness identified by PIM is currently located in New York. Service of process would likely be unavailable to compel this witness to testify if this action were transferred to Rhode Island.