UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SS&C TECHNOLOGIES, INC.,
       -Plaintiff

       -v-                                  CIVIL 3:07 CV 484 (CFD)

PROVIDENCE INVESTMENT MANAGEMENT,
       -Defendant

## MAGISTRATE JUDGE'S OPINION

The court has conducted a six-day evidentiary hearing on plaintiff SS&C Technologies, Inc.'s ("SS&C") motion for a preliminary injunction (Dkt. # 44). On the basis of the evidence adduced in great detail, the magistrate concludes that a preliminary injunction should not enter on the present record in this case. Also pending before the court are cross-motions for prejudgment remedies (Dkt. ## 44, 66). These motions were also the subject of the evidentiary hearing. The magistrate declines to grant either of these motions for the reasons set forth below.[1]

---

[1] The injunction portion of these proceedings is before the magistrate pursuant to 28 U.S.C. § 636(b)(1)(B), while the prejudgment remedy portion is before the magistrate pursuant to § 636(b)(1)(A). The standard of review under § 636(b)(1)(B) is de novo. The standard of review under § 636(b)(1)(A) is the "clearly erroneous" or "contrary to law" standard. Id. This matter could

## I. INJUNCTIVE RELIEF

The magistrate judge declines to enter an injunction for a variety of reasons, the most important being that he lacks the authority to do so. See 28 U.S.C. § 636(b)(1)(A); Dole Fresh Fruit v. United Banana, 821 F.2d 106, 108 n. 1 (2d Cir. 1987). As far as a recommendation is concerned, 28 U.S.C. § 636(b)(1)(B), the magistrate declines to recommend that the district judge enter a preliminary injunction, because even the less onerous prong of the Jackson Dairy test has not been satisfied. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979).

### A. Irreparable Harm

"Irreparable injury is the sine qua non for the grant of preliminary injunctive relief." United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). Irreparable harm has been defined by the Second Circuit as "harm shown to be non-compensable in terms of money damages." Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir. 2003). "[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue." Jayaraj v. Scapini, 66

---

have been before the magistrate pursuant to § 636(c) and consolidated with a trial on the merits, but the parties elected not to avail themselves of this opportunity. It is now too late for the parties to consent nunc pro tunc pursuant to § 636(c), as the proceedings have already been held; the magistrate would have structured the proceedings differently and, perhaps, asked more or fewer questions had it been before him pursuant to § 636(c); and, finally, the magistrate does not consent to proceeding under § 636(c).

F.3d 36, 39 (2d Cir. 1995), (citing Loveridge v. Pendelton Wollen Mills, Inc., 788 F.2d 914 (2d Cir. 1986)).

A showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983), quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 431 (1973). The threat of irreparable harm, moreover, must be actual and imminent, not remote or speculative. Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002); Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989); Jackson Dairy, Inc., 596 F.2d at 72.

The magistrate finds that if the plaintiff prevails, its damages are quantifiable. Money damages will provide an adequate remedy. The court finds on the basis of the uncontroverted testimony, as well as the representations of defendant's counsel, that the defendant continues in operation and has no plans to cease doing business or evade any judgment that might be entered against it.

### B. The Balance of Hardships

The less onerous branch of the Jackson Dairy test itself has two parts. The second part of this somewhat easier test focuses on the so-called "balance of hardships." Under the second, less onerous prong a movant must show "a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

Jackson Dairy, Inc., 596 F.2d at 72. The court finds that the balance of hardships does not tip *decidedly* in plaintiff's favor. In fact, it is unclear whether the balance tips in plaintiff's favor at all. For these reasons, the magistrate cannot recommend that Judge Droney enter an injunction.

## II. THE PREJUDGMENT REMEDY APPLICATIONS

One might think that the pendency of *cross*-motions for prejudgment remedies requires the entering of relief for one side or the other. This is not so. Cross-motions for prejudgment remedies are no different than cross-motions for summary judgment in this respect. Each motion must be considered and adjudicated independently, and the "[d]enial of one cross motion does not imply the grant of the opponent's cross motion." 11 Moore's Federal Practice § 56.10[6] at 56-75 (Matthew Bender 3d ed.).

### A. The Standard for the Issuance of a Prejudgment Remedy

Although the federal civil rules govern the conduct of an action in federal court, state law determines when and how a provisional remedy is obtained. See Fed. R. Civ. P. 64; Bahrain Telecommunications Co. V. DiscoveryTel, Inc., 476 F. Supp. 2d 176, 183 (D.Conn. 2007). Under Connecticut law, a prejudgment remedy is intended to secure the satisfaction of a judgment should the movant prevail. See Cendant Corp. v. Shelton, No. 3-06-cv-854 (JCH), 2007 WL 1245310 at *3 (D. Conn. April 30, 2007).

A court may award a prejudgment remedy if the movant

demonstrates probable cause to sustain the validity of its claims. Specifically, a prejudgment remedy is appropriate only

> [i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the [movant] has shown probable cause that such a judgment will be rendered in the matter in the [movant's] favor in the amount of the prejudgment remedy sought . . . .

Conn. Gen Stat. § 52-278d(a). "Probable cause" is less demanding than the "preponderance of the evidence" or the "likelihood of success" standards. Cendant Corp., 2007 WL 1245310 at *3; Bahrain Telecomm., 476 F.Supp.2d at 182. It is a "flexible common sense standard," Bahrain Telecomm., 476 F. Supp. 2d at 182, consisting of "a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Cendant Corp., 2007 WL 1245310 at *3 (quoting Three S. Development Co. v. Santore, 193 Conn. 174, 175 (1984)). In determining whether a movant has shown probable cause, the court necessarily performs a predictive function with respect to both liability and damages.

When considering a motion for a prejudgment remedy, the court must weigh the probabilities in light of the evidence presented, and determine if the movant has shown probable cause to sustain the validity of its claim. See Dunleavy v. Paris Ceramics, 47 Conn. Supp. 565, 569 (Conn. Super. 2002). In assessing whether a

prejudgment remedy should issue, the court must consider not only the substantiality of the evidence underlying the movant's claims, but also the apparent strength of the evidence underlying the opponent's defenses and set-offs. See Roberts v. Caton, 224 Conn. 483, 487 n.4 (1993) ("[A] valid defense may defeat probable cause."). The court therefore, must balance the arguments and the evidence produced by both sides. Although the amount of damages in an application for a prejudgment remedy need not be determined with mathematical precision, Rafferty v. Noto Bros. Construction, LLC, 68 Conn. App. 685, 693 (2002), the record must be sufficient for the court to make a fair and reasonable prediction as to likely damages. Kendall v. Amster, 108 Conn. App. 319, 331 (2008).

Thus, in the instant case, each motion must be considered independently, and in light of the competing claims, counterclaims, and evidence. On the instant record, the court cannot state with a reasonable degree of probability that either side has shown probable cause that a judgment will enter in its favor.[2] Rather, when considered in light of each other, the best the court can conclude is that either side might prevail, or, alternatively, that

---

[2] Had this matter been before the magistrate for trial under § 636(c), he could well have actually decided many of the factual issues which are noted herein. It would be wholly inappropriate to make such final, binding factual determinations on the present record, which is a transcript of a lengthy, hotly-contested, well-tried prejudgment remedy hearing.

neither side has carried its burden of persuasion.[3]

## B. SS&C's Motion for a Prejudgment Remedy

SS&C's motion for a prejudgment remedy is based on its claim that Providence Investment Management ("PIM") materially breached the contract by wrongfully halting payment less than one year into a three-year agreement. SS&C argues that it had fulfilled all of its material obligations under the contract when PIM halted payment and that, even if it had not, PIM did not give them notice and an opportunity to cure, as required under the contract. SS&C claims it is thus entitled to a prejudgment remedy in the amount of $360,000.00, which represents the full remainder of payments that SS&C would have collected over the full course of the contract. The court cannot say that there is probable cause to sustain SS&C's claim that it is entitled to relief in any amount, let alone the full $360,000.00 it claims.

First, while a jury may find that SS&C's representations to PIM regarding the capabilities, ease of use, and timetable for implementation of the CAMRA software system were accurate,

---

[3]Ironically, the pending motions would be more easily decided had counsel on both sides not been such extraordinarily able advocates. The lawyers on both sides of this did such an exemplary job representing their respective clients and cross-examining their adversary's witnesses that it is a toss-up who will prevail after a plenary trial. Despite the excruciatingly dry subject matter of this lawsuit, the display of courtroom skill demonstrated by Mssrs. Scott Casher and Richard Weinstein made presiding over it quasi-enjoyable. The lesson the respective parties should learn from these proceedings is that neither side has a "slam dunk," despite what they may think.

truthful, and made in good faith, the court cannot say that such a finding is probable.[4] Given the significant, repeated, and continuing problems encountered during the CAMRA implementation process, a jury could find that SS&C did in fact misrepresent their capabilities to PIM in some way. That claim is the basis of PIM's cross-motion for a prejudgment remedy, as discussed below.

Next, while a jury may find that SS&C met its obligations over the course of the agreement, the court cannot say that such a conclusion is probable, given the testimony and evidence produced at the prejudgment remedy hearing. While the plaintiff's first witness, SS&C employee David Russell, indicated during his direct testimony that SS&C was able to provide virtually all of the functionality outlined in the contract, it became clear during his cross-examination that PIM had in fact reported a litany of delays, inconsistencies, and problems over the course of the implementation period. The testimony of witnesses for both sides further confirmed that the implementation process did not go smoothly, and that there were numerous complaints from PIM throughout that

---

[4]Throughout this opinion, the magistrate uses the would "jury" to denote the ultimate fact-finder in this case. It is not clear whether this case has been claimed to a jury. There was some confusion when the magistrate inquired about this at the hearing. If the parties do not claim this to a jury, then the term "trier of fact" should be substituted herein. The point is that before this matter can be resolved, there must be a plenary proceeding before the ultimate finder of fact, be it a judge or a jury.

process.[5]

Much of the functionality of CAMRA that PIM considered to be material was never fully accessible to PIM, and it is apparent that at no point were the parties able to complete the implementation process to the full satisfaction of PIM.  SS&C claims that virtually all of the problems and delays in implementation can be attributed to PIM,[6] and that the few issues that can be traced to the CAMRA system were quickly and adequately resolved through "workarounds," explicitly allowed under the contract as long as PIM can continue processing information.  PIM responds that the implementation problems are more appropriately attributed to SS&C and the CAMRA system, that any problems from their side were the result of the complexities of the system that they were justifiably

---

[5]The witnesses who testified for both sides are professional, intelligent, and articulate businessmen.  The magistrate does not find any of them to be incredible.  Nonetheless, some of the testimony that is likely to be adduced could well be problematic later at trial.  For example, the jury might be troubled to learn that PIM's Brian Wilson did not bother to read the user manual, although perhaps he will be rehabilitated.  Similarly, the jury may be troubled by the nonchalance with which SS&C's David Russell basically admitted on cross-examination that CAMRA did not really perform the functionalities which, on direct, he testified it did perform.  How this will play out before a jury is anyone's guess.  The magistrate is sure that the jury will be of a mind that businesses, like people: (1) should not be allowed to evade paying for what they have received; and (2) should not be bamboozled into paying for what they did not get.

[6]Pursuant to the contract, some of the necessary tasks and functions were to be carried out by SS&C, while others were to be handled by PIM.  Under this arrangement, the successful performance of each party was often dependant on that of the other.

unprepared for, and that SS&C's workarounds were not acceptable solutions to the problems they were designed to address.

While a jury could find that any delays and problems during implementation were purely the result of PIM's failure to satisfy its obligations under the contract, the court cannot say with any degree of comfort that such a finding is probable or likely. Arguably, a jury could equally find that the difficulties encountered are indicative of SS&C and CAMRA's failure, or even inherent inability, to fully provide the services promised to PIM under the contract. A jury could also find that the most likely explanation is that neither party satisfied its performance obligations under the contract. Further, while a jury could find that the workaraounds devised by SS&C adequately addressed problems with the CAMRA system, the court cannot say that such a conclusion is at all probable or likely. Thus, the court cannot say that there is probable cause to sustain the plaintiff's claims that it was not in material breach of the contract, and that virtually all of the problems and delays can be traced to PIM's failure to timely meet its obligations under the contract.

The court also finds that SS&C has failed to sustain its burden as to its claim that, even if SS&C was in material breach of the agreement at any point, PIM did not meet its contractual obligation to provide notice of that breach to SS&C and give them fifteen days in which to cure. PIM employees Richard Jeffrey and

Brian Wilson testified that many of the problems with CAMRA that they reported to SS&C throughout the implementation process resulted in either partial or complete inaccessibility of certain functionality considered by them to be material under the contract. It is true that a jury could find that, because PIM never explicitly said "you are in material breach, and now have fifteen days to cure," PIM violated the cure provision of the contract. The court cannot say that such a conclusion is at all probable though, as a jury could also find that PIM met its obligations under the cure provision by repeatedly alerting SS&C to problems with the CAMRA system that amounted to material breaches, before ultimately stopping payment.

Finally, PIM argues that even if SS&C is entitled to a prejudgment remedy in some amount, the proper measure of that remedy is lost profits, not the full contract amount that SS&C requests here. PIM further asserts that SS&C has not yet produced sufficient evidence from which a court or jury could determine lost profits, if any. This is not an insubstantial argument, and it identifies still another issue to be resolved at a plenary proceeding.

### B. PIM's Motion for a Prejudgment Remedy

PIM's cross-motion for a prejudgment remedy is based on its four-count counterclaim that SS&C (1) breached the agreement; (2) negligently misrepresented the capabilities of SS&C and CAMRA; (3)

fraudulently misrepresented the capabilities of SS&C and CAMRA; and thereby violated the Connecticut Unfair Trade Practices Act ("CUTPA"). PIM's counterclaim of negligent misrepresentation is stronger than its counterclaim for fraudulent misrepresentation, since the latter carries a higher burden of proof. While a jury could find for PIM on its counterclaims, the court cannot say that it is likely to do so, or that there is probable cause to sustain PIM's claim that SS&C made a knowing, material misrepresentation as to either CAMRA's capabilities or the difficulties PIM would have supplying the required data to SS&C.

First, the court cannot conclude that PIM has met its burden here on its claim that SS&C breached the agreement by failing to provide full functionality. As discussed, it is clear that there were numerous delays and problems throughout the implementation process. What is entirely unclear at this juncture is whether SS&C, PIM, or both are responsible for those delays and problems. Just as SS&C has not sustained its burden as to its claim that these problems can be wholly attributed to PIM, PIM has not produced sufficient evidence for this court to conclude that it is at all probable that a jury will find that the problems can be attributed to SS&C's material breach of the contract.

PIM further claims that SS&C gave assurances to them that CAMRA could and would provide PIM with reliable, complete, and accurate financial reports; that the conversion to that system

would be relatively easy; and that the conversion would occur no later than December 31, 2005. PIM claims that it would not have entered into the agreement but for these representations. While the testimony adduced at the hearing leaves little doubt that SS&C did in fact make these representations during the negotiation of the agreement, the court cannot say that there is probable cause to sustain PIM's assertion that these were negligent or fraudulent misrepresentations.

Arguably, PIM has produced no direct evidence that indicates an intention on the part of SS&C to misrepresent their capabilities or those of CAMRA. While it is more likely that a jury could find that SS&C negligently or carelessly made such misrepresentations, the court cannot say that such a conclusion is probable either. It is clear that successful implementation of the CAMRA system was dependent on a rather complex, reciprocal relationship between the parties, with the successful performance of each party conditioned on the timely and accurate performance of the other. A jury could conclude that there was a failure of condition, with all its attendant implications. A jury could also conclude that SS&C's initial representations were rooted in and dependent on the assumption that PIM would fully and effectively meet their obligations under the agreement. A jury could further conclude that PIM did in fact fail to timely and accurately perform the functions required of them under the contract. Because the court

cannot say that it is at all probable that a jury will conclude that SS&C made either fraudulent or negligent misrepresentations to PIM during negotiation of the contract, it must conclude that PIM has failed to show probable cause that a judgment will enter in its favor on this claim.

Finally, the court concludes that PIM has not met its burden as to its CUTPA claim. The practices complained of in that claim mirror those asserted in the plaintiff's breach of contract and misrepresentation claims. As above, the court cannot say with any degree of probability that PIM is likely to establish that SS&C engaged in the wrongful practices alleged.

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for injunctive relief (Dkt. # 44) is **DENIED,** plaintiff's motion for a prejudgment remedy (Dkt. # 44) is **DENIED,** and defendant's motion for a prejudgment remedy (Dkt. # 66) is **DENIED.**

**Dated at Hartford, Connecticut this 24th day of October, 2008.**

**/s/TPS**
**Thomas P. Smith**
**United States Magistrate Judge**